United States District Court
Eastern District of Michigan
Southern Division

United States of America,

v.

D-6 Nancy A. Johnson,

         Defendant.

Case No. 17-cr-20406

Honorable Paul D. Borman

Offense: **Conspiracy to Violate the Labor Management Relations Act** (18 U.S.C. § 371)

Maximum Imprisonment: 5 years

Maximum Fine: $250,000

Maximum Supervised Release: 3 years

---

## Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant **Nancy A. Johnson** and the government agree as follows:

**I.**    **Guilty Plea**

**A.**    **Count of Conviction**

Defendant **Nancy A. Johnson** will enter a plea of guilty to Count One of the Fourth Superseding Indictment.

- 1 -

Count One charges conspiracy to violate the Labor Management Relations Act, in violation of 18 U.S.C. § 371.

## Elements of the Offense

The elements of conspiracy to violate the Labor Management Relations Act, as charged in Count One of the Fourth Superseding Indictment, are as follows:

(1)     Two or more persons conspired to violate the Labor Management Relations Act in violation of 29 U.S.C. § 186(a)(2), (b)(1), and (d)(1).

(2)     The defendant knowingly and voluntarily joined the conspiracy.

(3)     A member of the conspiracy did one of the overt acts described in the Fourth Superseding Indictment for the purpose of advancing or helping the conspiracy.

**B.     Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for Defendant **Nancy A. Johnson's** guilty plea to Count One:

1.     From in or before 2009 through 2016, FCA executives conspired with one another, with FCA, with officials at the UAW, and with the UAW, to violate the Labor Management Relations Act. From 2014 through 2016, while serving as a representative and employee of the UAW, **Nancy A. Johnson** knowingly joined the conspiracy whereby officers and employees of the UAW would willfully request, receive, and accept—and agree to receive and accept—money and things of value

- 2 -

worth over $40,000 from persons acting in the interest of FCA. The prohibited payments and things of value included tens of thousands of dollars in personal travel, golf resort fees, lavish meals and parties, limousine services, designer clothing, jewelry, designer shoes, golf equipment, electronics, and a shotgun. During that time, FCA was the employer of tens of thousands of employees represented by the UAW.

2.     Defendant **Nancy A. Johnson**, then a representative and employee of the UAW, knowingly and voluntarily joined this conspiracy to take and receive money and things of value from persons acting in the interest of FCA. Johnson joined knowing that the money and things of value, which were delivered through and concealed by the UAW-Chrysler National Training Center (NTC), were willfully made with the intent to benefit **Nancy A. Johnson**, senior UAW official Virdell King, senior UAW official Keith Mickens, and other senior UAW officials, who were not permitted to receive the money and things of value.

3.     The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization based in Detroit, Michigan. The UAW represented tens of thousands of non-managerial employees employed by FCA at numerous locations in Michigan and across the United States. The UAW was a labor organization subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

4.    **Nancy A. Johnson** was a UAW employee who served as a senior official in the UAW Chrysler Department from 2014 through 2016. As a senior UAW official in the Chrysler Department, **Nancy A. Johnson** was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2015, **Nancy A. Johnson** served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA.

5.    Keith Mickens (D-5) was a UAW employee who served as a senior official in the UAW Chrysler Department from 2010 through 2015. As a senior UAW official in the Chrysler Department, Keith Mickens was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2011, Keith Mickens served as a member of the UAW national negotiating committee responsible for negotiating the terms of the collective bargaining agreements between the UAW and FCA.

6.    Virdell King (D-4) was a UAW employee who served as a senior official in the UAW Chrysler Department from 2008 until 2016. As a senior UAW official in the Chrysler Department, Virdell King was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA

on behalf of tens of thousands of FCA employees represented by the UAW. In 2011 and 2015, Virdell King served as a member of the UAW national negotiating committee responsible for negotiating the terms of the collective bargaining agreements between the UAW and FCA.

7.    Fiat Chrysler Automobiles US LLC was an automotive company based in Auburn Hills, Michigan, and the successor to the automotive company formerly known as Chrysler Group LLC. Both are referred to here as "FCA." FCA was an employer in an industry affecting interstate commerce and subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

8.    Alphons Iacobelli (D-2) was the FCA Vice President for Employee Relations and a person acting in the interest of employer FCA from 2008 through 2015. As the FCA Vice President for Employee Relations, Alphons Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW. As the FCA Vice President for Employee Relations, Alphons Iacobelli was FCA's lead representative for labor relations and managed FCA's relationship with the UAW. Alphons Iacobelli was the senior FCA official responsible for resolving disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW.

9.     Jerome Durden (D-1) was a Financial Analyst in FCA's Corporate Accounting Department. From 2008 through 2015, Jerome Durden was the controller of the NTC and served as the secretary of the NTC Joint Activities Board.

10.     The UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation based in Detroit, Michigan. The NTC purported to function as a labor management committee under the Labor Management Labor Relations Act, 29 U.S.C. § 186(c)(9). The stated purpose of the NTC was to provide for the education, training, and retraining of workers.

11.     The governing body of the NTC was known as the Joint Activities Board. The Vice President of Employee Relations of FCA and the Vice President of the Chrysler Department of the UAW served as the Chairmen of the NTC Joint Activities Board. The remainder of the Joint Activities Board was made up of senior officials from FCA and the UAW.

12.     FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and their co-conspirators used NTC bank accounts and NTC credit card accounts to conceal prohibited payments and things of value paid and delivered to senior UAW official **Nancy A. Johnson**, senior UAW official Virdell King, senior UAW official Keith Mickens, and other senior UAW officials.

- 6 -

13.     In and after 2014, FCA Vice President Alphons Iacobelli, FCA
Financial Analyst Jerome Durden, and other FCA executives encouraged and
authorized senior UAW official **Nancy A. Johnson** and other senior UAW officials
to use the NTC credit cards to pay for personal purchases and personal expenditures
in an effort to obtain benefits, concessions, and advantages in the negotiation,
implementation, and administration of the collective bargaining agreements
between FCA and the UAW.

14.     In approximately December 2014, **Nancy A. Johnson** told Virdell
King that FCA Vice President Alphons Iacobelli said, "if you see something you
want, feel free to buy it. I don't have a problem if you buy it on the charge card."
**Nancy A. Johnson** also told Virdell King "Al [Iacobelli] didn't have a problem"
with union officials making personal purchases on their NTC credit cards.

### Overt Acts

15.     One or more members of the conspiracy completed one or more of the
following overt acts to effect the object of the conspiracy:

16.     In June 2014, the UAW President approved the appointment of **Nancy
A. Johnson** as the Top Administrative Assistant to the Vice President for the UAW
Chrysler Department.  As the Top Administrative Assistant, **Nancy A. Johnson**
was the second most senior official in the UAW Chrysler Department.

17.     In and after 2012, NTC credit cards were given to senior UAW officials, including Virdell King, Keith Mickens, and others. **Nancy A. Johnson** received an NTC credit card in 2014.

18.     From 2014 through 2016, **Nancy A. Johnson** made purchases on her NTC credit card for her own benefit and, sometimes, at the direction and request of other high-ranking UAW officials and for the benefit of other high-ranking UAW officials.  **Nancy A. Johnson** also directed other UAW officials to use their NTC credit cards to make personal purchases for the benefit of other senior UAW officials.

19.     In October 2014, **Nancy A. Johnson** directed Virdell King to buy luggage at the London Luggage Shop in Detroit, Michigan. King used her NTC credit card to make the purchase.  This luggage was for **Johnson** and another senior UAW official.  The luggage purchased by Virdell King cost $811.01.

20.     In December 2014, **Nancy A. Johnson** directed Virdell King to buy luggage at the London Luggage Shop in Detroit, Michigan. King used her NTC credit card to make the purchase. This luggage was for **Johnson** and other senior UAW officials.  The luggage purchased by Virdell King cost $2,919.77.

21.     In August 2015, **Nancy A. Johnson** directed Virdell King to purchase a shotgun to be presented as a birthday present to another senior UAW officer.  At the direction of **Nancy A. Johnson**, Virdell King spent $2,182 to purchase an

- 8 -

Italian-made Beretta shotgun at Field & Stream in Troy, Michigan. Virdell King had the NTC pay for the shotgun, using funds provided by FCA.

22.     **Nancy A. Johnson** used the NTC credit card to make over $40,000 in personal purchases for other senior UAW officials and herself. **Nancy A. Johnson** made these personal purchases for herself and other high-ranking UAW officials knowing that the credit card purchases were authorized by individuals acting in the interest of FCA and paid for by funds provided by FCA.  Although **Nancy A. Johnson** made some purchases using her NTC credit card for her own personal benefit, the majority of the purchases that she made using her NTC credit card were done at the direction of and for the personal benefit of other senior UAW officials and not for her benefit.

### C.    Other Relevant Conduct

Sometime in 2014 or 2015, a high-level UAW official directed senior UAW officials to use money supplied by automobile manufacturing companies through joint UAW training centers to pay for travel, including travel solely for purported union business, as well as lavish meal and other entertainment costs of senior UAW officials and their friends, family and allies. This directive was issued in order to reduce costs to the UAW budget from such expenditures because the UAW's budget was under pressure.

In 2014, 2015, and 2016, in Palm Springs, California, high-level UAW officials used UAW funds to pay for extravagant meals, premium liquor, multi-month stays at condominiums, and multiple rounds of golf for little, if any, legitimate union-business or labor-management purposes.  As set forth above in the factual basis, some additional expenses in Palm Springs for golf, expensive meals, hotel suites, limousine services, condominium expenses, and other things were paid for using NTC credit cards with funds supplied by FCA.

During the period 2014 through 2016, 100% of the UAW salaries of a large number of UAW officials and employees, nominally assigned to the NTC, was paid for by FCA through the NTC. FCA paid these salaries for the UAW even though senior UAW officials and FCA executives both knew that these UAW officials and employees "assigned" to the NTC spent most of their work time performing tasks for the UAW, reported to the UAW, and enforced FCA's compliance with the collective bargaining agreement on behalf of the union and not for the benefit of FCA or the NTC.

Because **Nancy A. Johnson** provided this information to the United States pursuant to a proffer agreement with the United States, the parties agree that it should not be included in determining defendant's guideline calculations under U.S.S.G. §1B1.8(a).

- 10 -

## II.     Sentencing Guidelines

### A.     Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B.     Agreed Guideline Range

There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is **12–18 months**, as set forth on the attached worksheets. If the Court finds:

1. that defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from her probation officer; otherwise demonstrated a lack of acceptance of responsibility for her offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 12–18 months, the higher guideline range becomes the **agreed range**.

## III.     Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A.    Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed **18 months**.

### B.    Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is not more than three years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

### C.    Special Assessment

Defendant will pay a special assessment of $100.00.

### D.    Fine

There is no agreement as to fines.

### E.    Restitution

The Court shall order restitution to every identifiable victim of defendant's offense.

## IV.    Cooperation Agreement

The written cooperation agreement between Defendant Nancy A. Johnson and the government, which is dated July 23, 2018, is part of this plea agreement.

V.      **Use of Withdrawn Guilty Plea**

If the Court allows defendant to withdraw her guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), Johnson waives her rights under Fed. R. Evid. 410, and the government may use her guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against her in any proceeding.

VI.     **Defendant's Right to Withdraw from this Agreement**

Defendant Johnson may withdraw from this agreement, and may withdraw her guilty plea, if the Court decides to impose a sentence higher than 18 months. This is the only reason for which Johnson may withdraw from this agreement. The Court shall advise defendant that if she does not withdraw her guilty plea under this circumstance, the Court may impose a sentence greater than 18 months.

VII.    **Appeal Waiver**

Defendant Nancy A. Johnson waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 18 months, the defendant also waives any right she may have to appeal her sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

- 13 -

## VIII.   Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw her guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing her to withdraw her guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives her right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## IX.   Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## X.   Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time

- 14 -

before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## XI.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on July 23, 2018. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Matthew Schneider
United States Attorney


David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit

Charles J. Kalil II
Assistant United States Attorney

Date: 7-18-18


By signing below, defendant acknowledges that she has read (or has been read) this entire document, understands it, and agrees to its terms. She also acknowledges that she is satisfied with her attorney's advice and representation. Defendant agrees that she has had a full and complete opportunity to confer with her lawyer, and has had all of her questions answered by her lawyer.


Harold Gurewitz
Attorney for Defendant

Nancy A. Johnson
Defendant

Date: July 18, 2018

- 16 -

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

## WORKSHEET A (Offense Levels)

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

### 1. BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2E5.1(a)(2) | Prohibited payments to labor union representatives | 6 |
| 2E5.1(b)(2)(B); 2B1.1(b)(1)(D) | Value of prohibited payments > $40,000 but ≤ $95,000 | 6 |
| | | |
| | | |
| | | |

### 2. ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| 3B1.3 | Abuse of position of trust | 2 |
| 3B1.1 | Manager/supervisor of the offense | 2 |
| | | |
| | | |

A-1

| Defendant: | Nancy A. Johnson | Count: | 1 |
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

## 3.  ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2.  If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.



16

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*If this is the only Worksheet A, check this box and skip Worksheet B.*

*If the defendant has no criminal history, check this box and skip Worksheet C.*



A-2

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

# WORKSHEET B (Multiple Counts)

## Instructions (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts. "All counts involving substantially the same harm shall be grouped together into a single Group." (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group. (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

  - assign 1 unit to the Group with the highest offense level,
  - assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
  - assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
  - assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.

1. **GROUP ONE:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____        unit

2. **GROUP TWO:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____        unit

3. **GROUP THREE:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____        unit

4. **GROUP FOUR:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL _____        unit

5. **TOTAL UNITS**                               units

B-1

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

**6. INCREASE IN OFFENSE LEVEL**

1 unit ⟶  no increase          2 1/2 – 3 units ⟶ add 3 levels

1 1/2 units ⟶ add 1 level     3 1/2 – 5 units ⟶ add 4 levels

2 units ⟶ add 2 levels        > 5 levels ⟶ add 5 levels



**7. ADJUSTED OFFENSE LEVEL OF GROUP WITH THE HIGHEST OFFENSE LEVEL**



**8. COMBINED ADJUSTED OFFENSE LEVEL**

Enter the sum of the offense levels entered in Items 6 and 7.



B-2

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

## WORKSHEET C (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses):_____

### 1.   PRIOR SENTENCES

#### Prior Sentence of Imprisonment Exceeding 13 Months (U.S.S.G. §§ 4A1.1(a)):

**3 POINTS**

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period. (*See* U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

#### Prior Sentence of Imprisonment of at Least 60 Days (U.S.S.G. §§ 4A1.1(b)):

**2 POINTS**

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).

#### Other Prior Sentences (U.S.S.G. §§ 4A1.1(c)):

**1 POINT**

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)). NOTE: No more than 4 points may be added under this item.

C-1

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

\*     If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*     A release date is required in only two situations:  (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; or (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses).

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

**2.   COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).)  List the type of control and identify the sentence from which it resulted.



**3.   PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE (U.S.S.G. § 4A1.1(e))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence.   But enter no points where the sentences are considered related because the offenses occurred on the same occasion.   (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(p).)    Identify the crimes of violence and briefly explain why the cases are considered related.  NOTE: No more than 3 points may be added under this item.



**4.   TOTAL CRIMINAL HISTORY POINTS**

Enter the sum of the criminal history points entered in Items 1-4.

> 0

**5.   CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|:---:|:---:|
| 0-1 | I |
| 2-3 | II |
| 4-6 | III |
| 7-9 | IV |
| 10-12 | V |
| ≥13 | VI |

> I

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

## WORKSHEET D (Guideline Range)

1. **(COMBINED) ADJUSTED OFFENSE LEVEL**
   Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level entered in item 8 of Worksheet B.

   > 16

2. **ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY (U.S.S.G. § 3E1.1)**

   > -3

3. **TOTAL OFFENSE LEVEL**

   Enter the difference between Items 1 and 2.

   > 13

4. **CRIMINAL HISTORY CATEGORY**

   Enter "I" if the defendant has no criminal history. Otherwise, enter the criminal history category entered in Item 6 of Worksheet C.

   > I

5. **CAREER OFFENDER/CRIMINAL LIVELIHOOD/ARMED CAREER CRIMINAL/DANGEROUS SEX OFFENDER (U.S.S.G. ch. 4, pt. B)**
   a. <u>Total Offense Level:</u> If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision (U.S.S.G. § 4B1.3), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a total offense level higher than the total offense level entered in Item 3, enter the higher offense level total.

   > NA

   b. <u>Criminal History Category:</u> If the career offender provision (U.S.S.G. § 4B1.1), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a criminal history category higher than the criminal history category entered in Item 4, enter the higher criminal history category.

   > NA

6. **GUIDELINE RANGE FROM SENTENCING TABLE (U.S.S.G. CH. 5, PT. A)**
   Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.

   > 12-18
   >
   > months

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

7.    **STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**
If the maximum sentence authorized by statute is below, or a minimum sentence required by statute is above, the guideline range entered in Item 6, enter either the guideline range as restricted by statute or the sentence required by statute. (*See* U.S.S.G. § 5G1.1.) If the sentence on any count of conviction is required by statute to be consecutive to the sentence on any other count of conviction, explain why.

NA

months

D-2



| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

## WORKSHEET E (Authorized Guideline Sentences)

1. **PROBATION**
   a. <u>Imposition of a Term of Probation</u> (U.S.S.G. § 5B1.1)

   ☒  1. Probation is not authorized by the guidelines (minimum of guideline range ≥ 10 months or statute of conviction is a Class A or a Class B felony). If this box is checked, go to Item 2 (Split Sentence).

   ☐  2. Probation is authorized by the guidelines (minimum of guideline range = zero months).

   ☐  3. Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 9 months).

   b. <u>Length of Term of Probation</u> (U.S.S.G. § 5B1.2)

   ☐  1. At least 1 year but not more than 5 years (total offense level ≥ 6)
       2. No more than 3 years (total offense level < 6).

   c. <u>Conditions of Probation</u> (U.S.S.G. § 5B1.3)

2. **SPLIT SENTENCE (U.S.S.G. § 5C1.1(C)(2), (D)(2))**

   ☐  a. A split sentence is not authorized (minimum of guideline range = 0 months or ≥ 15 months).

   ☒  b. A split sentence is authorized (minimum of guideline range > 0 months but ≤ 12 months). The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 10 or 12 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, 6, 8, or 9 months). The authorized length of the term of supervised release is set forth below in Item 4.b.

3. **IMPRISONMENT (U.S.S.G. CH. 5, PT. C)**
   A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D). (*See* U.S.S.G. § 5C1.1.)

E-1

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

4. **SUPERVISED RELEASE (U.S.S.G. ch 5., pt. D)**

    a. <u>Imposition of a Term of Supervised Release</u> (U.S.S.G. § 5D1.1)

        The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute. The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

    b. <u>Length of Term of Supervised Release</u> (U.S.S.G. § 5D1.2)

        ☐ 1. At least 2 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

        ☒ 2. At least 1 year but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

        ☐ 3. 1 year, where the count of conviction is a Class E felony or a Class A misdemeanor, i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

        ☐ 4. The statute of conviction requires a minimum term of supervised release of ▓▓▓ years.

    c. Conditions of Supervised Release (U.S.S.G. § 5D1.3)

        The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

5. **RESTITUTION (U.S.S.G. § 5E1.1)**

    ☒ 1. The court *must* order full restitution to the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3556, 3663A, 3664.) The court will determine who the victims are and their restitution amounts.

    ☐ 2. The court *must* order full restitution to the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3556, 3663A, 3664) The parties agree that full restitution is $▓▓▓▓▓▓▓.

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

☐ 3. The parties agree that the court *may* order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(3), 3664.)

☐ 4. The parties agree that the court *may also* order restitution to persons other than the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3), 3664.)

☐ 5. Restitution is not applicable.

## 6. FINE (U.S.S.G. § 5E1.2)

    a. <u>Fines for Individual Defendants</u>

        The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).) Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).) However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

    b. <u>Fine Range from Fine Table  (U.S.S.G. § 5E1.2(c)(3))</u>

| **Minimum Fine** | **Maximum Fine** |
|---|---|
| $5,500 | $55,000 |

E-3

| Defendant: | Nancy A. Johnson | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 186) |

7. **SPECIAL ASSESSMENT(S)  (U.S.S.G. § 5E1.3)**

The court must impose a special assessment on every count of conviction.   The special assessments for individual defendants are:

- $100.00 for every count charging a felony ($400 for a corporation),
- $25.00 for every count charging a Class A misdemeanor ($125 for a corporation),
- $10.00 for every count charging a Class B misdemeanor ($50 for a corporation), and
- $5.00 for every count charging a Class C misdemeanor or an infraction ($25 for a corporation).

The defendant must pay a special assessment or special assessments in the total amount of $100.

8. **FORFEITURE (U.S.S.G. § 5E1.4)**

☐   Assets of the defendant will be forfeited.        ☒   Assets of the defendant will not be forfeited.

9. **ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES**

List any additional applicable guideline, policy statement, or statute.

10. **UPWARD OR DOWNWARD DEPARTURE  (U.S.S.G. ch. 5, pts. H & K)**

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range.

E-4

(Rev. April 2014)